UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DERRICK R. SPENCER,
    Plaintiff,

V.

NURSE BETH, ET AL.,
    Defendants.

PRISONER
CASE NO. 3:11-cv-328 (RNC)

## INITIAL REVIEW ORDER

Plaintiff, a Connecticut inmate, brings this action pro se under 42 U.S.C. § 1983 against Department of Correction personnel at Garner Correctional Institution. Named as defendants are Warden Semple, Captain Androlopius, Nurse Beth, and Correctional Officer Pelletier.

Pursuant to 28 U.S.C. § 1915A(b)(1), the Court must review the complaint, identify cognizable claims, and dismiss any part of the complaint that fails to state a claim on which relief may be granted. In order to state a claim on which relief may be granted, a complaint must contain sufficient factual matter, accepted as true, to support a reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

For reasons set forth below, the Court concludes that the complaint fails to state a claim on which relief can be granted against any of the named defendants. It seems unlikely that the plaintiff can allege facts supporting a constitutional claim against any of the named defendants based on the events in question. However, an action such as this should not be dismissed

with prejudice unless it is unmistakably clear that the complaint lacks merit.  See Abbas v. Dixon, 480 F.3d 636, 639-40 (2d Cir. 2007).  Accordingly, the plaintiff will be given an opportunity to file an amended complaint on or before November 16, 2012.

Plaintiff's Allegations

The plaintiff's allegations, set forth in the complaint and in documents attached to the complaint, are as follows.  On October 13, 2010, Dr. Castro prescribed a muscle relaxant for the plaintiff for a period of one week to treat back spasms.  Dr. Castro informed the plaintiff that the medication could make him drowsy, so he should not use the stairs in the unit, and the medication would be brought to him.  Nurse Beth and Officer Pelletier reacted with disdain when they learned that the plaintiff's medication would have to be delivered to his cell.  On October 20, 2010, Dr. Castro renewed the prescription for one more week.

On October 23, 2010, Nurse Beth refused to bring the medication to the plaintiff's cell.  That same day, Officer Pelletier, referring to the plaintiff, stated, "I don't know why I should have to pamper this n*****." (Expletive omitted).  Later that day, the plaintiff submitted a complaint to his unit manager, Captain Androlopius, asking that Officer Pelletier be informed that the plaintiff's prescription had been extended for a week and he was not to use the stairs because the medication made him drowsy and he might fall.

The next day, October 24, 2010, the plaintiff submitted the

2

following written complaint to Warden Semple:

> Nurse Beth told C.O. Diaz to tell me to go downstairs to take my medication. C.O. Diaz told Nurse Beth that I wasn't able to go downstairs. She didn't care. When I came to my cell door, Beth yelled for me to come to her (downstairs). I informed her that the doctor said, "Being on this medication will make you tired and drowsy. Do not use the stairs!" 10.13.10 is when the doctor prescribed this medication. On 10.20.10 the doctor extended the medication for one week more. Now, if the doctor has extended the treatment for an additional week, doesn't it still mean that I should not use the stairs! COMMON SENSE. From my cell door I said this to Nurse Beth. I told her as well that, "I need my medication . . . medical as well as psychological. Do not mark down in your book that I refused medication, when in fact, you are the one who refuses to bring me my medication." I am sending this complaint straight to the Warden because: many complaints made to the unit manager about Nurse Beth has fallen on deaf ears. The unit manager and Beth are friends, so Beth does what she wants to who she wants: it is 11:45 a.m. and I still haven't received my morning meds. STOP PLAYING WITH MY MEDICAL AND PSYCHOLOGICAL CONDITION. P.S. It is now 2:46 p.m. My back hurts and I have a headache. Still no medication.

Warden Semple responded: "I am forwarding this to your Unit Manager [Captain Andropolius] to address this matter."

On November 2, 2010, prison officials conducted an inspection of the plaintiff's housing unit. During the inspection, he was handcuffed and seated. When the inspection was completed, he stood up, felt lightheaded, stumbled backwards, and hit his head on the floor. On learning that the plaintiff had hit his head "really hard," Nurse Beth called a medical code and Dr. Castro responded. After assessing the plaintiff's condition, Dr. Castro said, "This is from the [medication]. I'm taking you off it." The plaintiff said, "What about my back spasms?" The doctor shrugged his

3

shoulders.  The plaintiff was then escorted back to his cell.

At about 3:15 that afternoon, the plaintiff had a headache and his neck muscles felt tight.  He asked Correctional Officer Rinalti to ask Nurse Beth for Motrin.  Officer Rinalti responded that Nurse Beth wasn't at the nursing station.  Approximately thirty minutes later, the plaintiff asked Officer Rinalti if he had forgotten about the plaintiff's need for Motrin.  Officer Rinalti responded that he had spoken with Nurse Beth and she had said, "I'm not giving him anything right now."  Rinalti added that Nurse Beth had said the plaintiff would be given something "[l]ater."  The shift was about to end so this meant the plaintiff would not get his medication until the next shift.  Within minutes, Nurse Beth and Captain Andrologius appeared at the plaintiff's cell and asked him to sign a form.  Nurse Beth told the plaintiff to "Hurry up."  The plaintiff did not thoroughly understand the form and felt he was being rushed so he refused to sign.

Analysis

The plaintiff's principal claim appears to be that Nurse Beth deprived him of appropriate medical care on October 23, 2010, and November 2, 2010.  Accordingly, it is necessary to determine whether the plaintiff's allegations, accepted as true and liberally construed, state a claim for relief against Nurse Beth under § 1983.

In cases brought by prisoners under § 1983 alleging a denial of medical care, the prisoner's claim is legally sufficient if the

alleged acts or omissions qualify as cruel and unusual punishment in violation of the Eighth Amendment. This standard is met when the defendant's "acts or omissions [are] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Harrison V. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000). Deliberate indifference is equivalent to the criminal law standard of recklessness. *Farmer v. Brennan*, 511 U.S. 825, 839-40. (1994)." It exists when an official knows an inmate faces a substantial risk of serious harm, and disregards the risk by failing to take reasonable measures to abate it. *Id.* at 847. Substandard care, inadvertent failure to provide care, and disagreement as to the appropriate care are insufficient to support a constitutional claim. See *Estelle*, 429 U.S. at 105-06.

The deliberate indifference standard includes an objective component and a subjective one. The objective prong requires that the alleged deprivation be sufficiently serious. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). The subjective prong requires that the defendant act with a sufficiently culpable state of mind. *Id.* Both prongs must be satisfied.

A medical condition is sufficiently serious to satisfy the objective prong when failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Harrison*, 219 F.3d at 136. In determining whether a medical condition, objectively viewed, is sufficiently serious to

5

support a constitutional claim, courts consider whether a reasonable doctor or patient would perceive the condition as important and worthy of comment or treatment, whether the condition significantly affects daily activities, and the existence of chronic and substantial pain. *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). More than minor discomfort or injury is required to demonstrate a serious medical need. *Compare Sonds v. St. Barnabas Hosp. Correctional Health Servcs.*, No. 00 civ. 4968, 2001 WL 664402 (S.D.N.Y. May 21, 2001)("cut finger, even when skin is 'ripped off,' . . . does not, as a matter of law, qualify as an injury severe enough to justify civil rights relief"); *Henderson v. Doe*, No. 98 Civ. 5011, 1999 WL 378333, at *2 (S.D.N.Y. June 10, 1999)(broken finger did not rise to level of urgency required to support constitutional claim); *Veloz v. New York*, 35 F.Supp.2d 305, 312 (S.D.N.Y. 19999)(foot condition involving fracture fragment and arthritis not sufficiently serious) *with Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)(abscessed teeth that caused prisoner great pain for six months and prevented him from chewing properly constituted objectively serious condition); *Hathaway*, 37 F.3d at 67 (degenerative hip condition that required surgery prior to incarceration and produced extreme pain leading to complaints on about 70 occasions was objectively serious).

"When the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the

6

challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone" in evaluating the objective prong." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003). In doing so, a court may consider the absence of adverse medical effects or demonstrable physical injury associated with the delay or interruption. *See Farid v. Ellen*, 2006 WL 59517, at *10 (S.D.N.Y. Jan. 11, 2006).

Viewed in light of these principles, the plaintiff's allegations regarding Nurse Beth are insufficient to state a claim on which relief can be granted under § 1983 for denial of medical care in violation of the Eighth Amendment. Dealing first with the allegations concerning the events of October 23, 2010, the complaint does not allege a flat refusal by Nurse Beth to provide medication. Rather, it alleges a standoff between the plaintiff and Nurse Beth: Nurse Beth wanted the plaintiff to walk down the stairs to get the medication, which the plaintiff refused to do citing the advice he had received from Dr. Castro ten days earlier that he should not use the stairs. Even assuming Nurse Beth should have delivered the medication to the plaintiff's cell in light of the doctor's advice, there is no allegation that her failure to do so caused, or risked, sufficiently harmful medical effects to provide a basis for civil rights relief.

With regard to the events of November 2, 2010, the plaintiff's allegations are similarly deficient under the deliberate indifference standard. The plaintiff's allegations that he had a

headache and his neck muscles felt tight do not satisfy the objective prong. With regard to the subjective prong, the allegations do not suggest that Nurse Beth willfully disregarded a substantial risk of serious harm to the plaintiff.

With regard to Warden Semple and Captain Andrølopius, the plaintiff's claim appears to be that they are responsible for Nurse Beth's failure to promptly provide the plaintiff with Motrin on November 2, 2010. The theory appears to be that they were on notice, as a result of the plaintiff's complaints concerning the events of October 23, 2010, that Nurse Beth would withhold medication from the plaintiff, and they should have done more to correct the situation. Because the plaintiff's allegations concerning Nurse Beth's conduct on November 2, 2010, are insufficient to state a claim for relief against her under § 1983, her conduct that day cannot provide the basis for a § 1983 claim against Warden Semple or Captain Andrølopius.

The claim against the remaining defendant, Officer Pelletier, appears to be based on the allegations that he subjected the plaintiff to racial remarks. Such wrongful conduct on the part of a correctional officer cannot be condoned. However, an inmate has no constitutionally protected right to be free from verbal harassment. See Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1986)(name-calling, without any appreciable injury, does not violate inmate's constitutional rights). In the absence of any allegation that Officer Pelletier subjected the plaintiff to

physical abuse, the allegations against this defendant fail to state a claim on which relief can be granted.

Orders

Accordingly, all claims against the named defendants are hereby dismissed without prejudice pursuant to 28 U.S.C. § 1915A(b)(1). Ordinarily, when a prisoner brings an action *pro se* under § 1983, and the court determines that the complaint fails to state a claim on which relief can be granted, the prisoner should be given notice and an opportunity to file an amended complaint curing the problems identified by the court if he can do so in good faith. In this case, it seems unlikely that the plaintiff can allege facts supporting a claim of constitutional magnitude based on the events in question. Even so, he will be given an opportunity to file an amended complaint. To be timely, the amended complaint must be filed on or before November 16, 2012.

(2) The Pro Se Prisoner Litigation Office will send a courtesy copy of the Complaint and this Initial Review Order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

So ordered this 15th day of October 2012.

_____/s/_____
Robert N. Chatigny, U.S.D.J.